**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BOUNCE CURL, LLC, <br><br> Plaintiff, <br><br> v. <br><br> THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," <br><br> Defendants. | Case No. 24-cv-11425 <br><br> **Judge Sara L. Ellis** <br><br> **Magistrate Judge Heather K. McShain** |

## **PLAINTIFF'S MEMORANDUM ESTABLISHING THAT JOINDER IS PROPER**

Plaintiff Bounce Curl, LLC ("Plaintiff") submits the following memorandum establishing that joinder is proper.

**INTRODUCTION**

Plaintiff is a woman-owned company where hair care meets cultural heritage and innovation. [1] at ¶ 5. Plaintiff is a leading innovator in the design and manufacture of innovative hair products and hair tools, including hairbrushes and combs, shampoos and conditioners, hair styling products, hair vitamins, perfumes, oils, hair accessories, and hair drying products (collectively, the "Bounce Curl Products"). *Id*. at ¶ 6. Bounce Curl Products have become enormously popular, driven by Plaintiff's arduous quality standards and innovative designs. *Id*. at ¶ 7. Bounce Curl Products are known for their distinctive patented designs. *Id*. at ¶ 9. One such product is the Bounce Curl "Define Styling Brush" (the "Bounce Curl Hairbrush")[1], the design of which is covered by Patent No. D1,028,527 (the "Bounce Curl Design"). *Id*. The success of Bounce Curl Hairbrush has resulted in widespread infringement of the Bounce Curl Design. *See id*. at ¶¶ 1, 12.

Plaintiff has filed his action to combat Defendants' infringement of its Bounce Curl Design and to protect unknowing consumers from purchasing infringing products from nondescript, China-based e-commerce stores. *See id*. at ¶¶ 3, 19. This is different than the type of case that the American Invents Act ("AIA") sought to stop, which was a lawsuit filed by a non-practicing entity ("NPE"). In those cases, NPEs typically asserted multiple utility patent claims against distinct, well-known and identifiable companies all selling different allegedly infringing products. In this case, Plaintiff is asserting a single design patent claim against unknown e-commerce stores offering for sale and selling the same unauthorized and unlicensed product, namely hairbrushes, that infringe the Bounce Curl Design (the "Infringing Product"). Under these allegations, which go well beyond alleging mere parallel conduct, joinder of the nondescript e-commerce stores listed

---

[1] *See* https://www.bouncecurl.com/products/define-styling-brush.

in Schedule A to the Complaint ("Seller Aliases") is proper and in compliance with 35 U.S.C. § 299 and Fed. R. Civ. P. 20(a)(2). *See Oakley, Inc. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 21-cv-00818 (N.D. Ill Mar. 11, 2021) (Pacold, J.) (unpublished) (Docket No. 25) (holding that Plaintiff showed that the joinder requirements of 28 U.S.C. § 299 and Fed. R. Civ. P. 20 had been met).

More specifically, the "transaction, occurrence, or series of transactions or occurrences" requirement of Section 299(a)(1) is analogous to Fed. R. Civ. P. 20(a)(2). This provision is satisfied for the same reasons that Fed. R. Civ. P. 20 is satisfied in similar trademark infringement and counterfeiting cases. *Oakley, Inc. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 1:21-cv-00536 (N.D. Ill. Mar. 6, 2021) (Kennelly, J.) (unpublished) (Docket No. 14) (finding evidence submitted "suffices to satisfy the 'series of transactions or occurrences' requirement of section 299(a)(1)" in design patent infringement case); *Chrome Cherry Ltd. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 21-cv-05491, 2021 WL 6752296, at *1-2 (N.D. Ill. Oct. 20, 2021) (Valderrama, J.) (finding "Plaintiff has sufficiently demonstrated that [the claims] arise out of the same occurrence or series of occurrences" in design patent case); *Bose Corp. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 334 F.R.D. 511, 517 (N.D. Ill. 2020) (Durkin, J.) ("Plaintiff has sufficiently demonstrated that [the asserted claims] arise out of the same occurrence or series of occurrences. Therefore, joinder of the 'Schedule A' Defendants is proper at this preliminary stage").

Further, the "selling of the same accused product" requirement of 35 U.S.C. § 299 is met since each of the Seller Aliases is offering for sale and selling the same unauthorized and unlicensed product, namely hairbrushes, that infringe the Bounce Curl Design. *See Oakley, Inc.*, No. 1:21-cv-00536 (unpublished) (Docket No. 14) (joinder proper because defendants "appear to

2

be selling the exact same product, indicating that they all obtained it from one or a few common suppliers"). To comply with the AIA, Bounce Curl has limited its design infringement cases to only include Seller Aliases that are selling the same product that infringes the same design patent claim. *See, e.g., Oakley, Inc. v. The P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 1:20-cv-06676 (N.D. Ill. Nov. 10, 2020) (all seller aliases selling copies of Jawbreaker patented design); *Oakley, Inc. v. The P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 1:20-cv-06495 (N.D. Ill. Nov. 2, 2020) (all seller aliases selling copies of Radarlock patented design). For these reasons, joinder is proper.[2] *Oakley, Inc.*, No. 21-cv-00818 (Docket No. 25); *NG Imports, et al. v. Does 1-254 as Identified in Exhibit 2*, No. 21-cv-00514 (Mar. 8, 2021) (Docket No. 24) (unpublished).

## BACKGROUND

As part of a coordinated effort to sell Infringing Products, Defendants operate under the nondescript e-commerce stores listed in Schedule A to the Complaint and use templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. [1] at ¶ 19. Defendants take advantage of this anonymity, as well as the mass reach afforded by the Internet and the cover afforded by international borders, to violate Plaintiff's design rights and to exploit U.S. consumers. Plaintiff faces a "swarm of attacks" on its design rights, and "filing individual causes of action against each counterfeiter ignores the form of harm" that Plaintiff faces. *Bose Corp.* 334 F.R.D. at 517. Joinder is proper because Fed. R. Civ. P. 20 and 35 U.S.C. § 299's inclusion of the term

---

[2] "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21; *Lee v. Cook Cnty., Ill.*, 635 F.3d 969, 971 (7th Cir. 2011).

"occurrence" allows a plaintiff to join in a single case the defendants who participate in such unlawful occurrences. *Id.*

A January 24, 2020, report titled *Combating Trafficking in Counterfeit and Pirated Goods* prepared by the U.S. Department of Homeland Security, Office of Strategy, Policy & Plans provides further insight regarding operation of e-commerce stores like Defendants' Seller Aliases. Exhibit 1 to the Declaration of Justin R. Gaudio (the "Gaudio Dec."). Specifically, the report found that:

- "Not only can counterfeiters set up their virtual storefronts quickly and easily, but they can also set up new virtual storefronts when their existing storefronts are shut down by either law enforcement or through voluntary initiatives set up by other stakeholders such as market platforms, advertisers, or payment processors." *Id*. at p. 12.
- "In some cases, counterfeiters hedge against the risk of being caught and their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. A key underlying problem here is that on at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling. In the absence of full transparency, counterfeiters can quickly and easily move to a new virtual store if their original third-party marketplace is taken down." *Id*. at p. 22.
- "Platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, nor to link one seller profile to other profiles owned by that same business, or by related businesses and owners. In addition, the party that appears as the seller on the invoice and the business or profile that appears on the platform to be the seller, may not always be the same. This lack of transparency allows one business to have many different profiles that can appear unrelated. It also allows a business to create and

4

dissolve profiles with greater ease, which can obfuscate the main mechanism that consumers use to judge seller credibility, namely reviews by other buyers." *Id*. at p. 39.

Well-pleaded allegations in Plaintiff's Complaint establish that Defendants are working in a similar manner and during the same time period to sell Infringing Products, as part of the same "occurrence" of mass harm, *i.e.*, the swarm of all Defendants attacking Plaintiff's design patent rights at once. *Bose Corp.*, 334 F.R.D. at 516. This establishes a logical relationship supporting joinder. Joinder at this stage comports with the strongly encouraged policy of "entertaining the broadest possible scope of action consistent with fairness to the parties." *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966); s*ee also Bose Corp.*, 334 F.R.D. at 517 (e-commerce stores offering for sale counterfeit Bose products properly joined); *Weifang Tengyi Jewelry Trading Co. Ltd v. The Partnerships, et al*., No. 1:18-cv-04651 (N.D. Ill. July 5, 2018) (unpublished) (Docket No. 150) ("[Plaintiff's] claims against [Defendants] rest in substantial part on the same legal and factual grounds as [Plaintiff's] claims against the other defendants, including that [Defendants] were involved in a counterfeiting network with the other defendants. Given the nature of [Plaintiff's] claims, joinder is proper under Civil Rule 20(a)(2)"); *Otter Products, LLC, et al. v. James Chen, et al.*, No. 16-cv-06807 (N.D. Ill. Aug. 31, 2016) (Shadur, J.) (same). Indeed, cases like this one have proven effective at substantially reducing online counterfeiting and infringement.

## I.  LEGAL STANDARD

The Supreme Court has stated that under the Federal Rules of Civil Procedure, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *In re EMC Corp*., 677 F.3d 1351, 1358 (Fed. Cir. 2012) (quoting *Gibbs*, 383 U.S. at 724). Courts have not provided a bright-line

5

definition for this phrase so that it can continue to be flexible enough to allow effective trial management. *See In re EMC Corp.*, 677 F.3d 1351, 1358 (Fed. Cir. 2012) (citing 7 Charles Alan Wright et al., Federal Practice and Procedure § 1653 (3d ed. 2001)).

As to the first prong of Fed. R. Civ. P. 20(a)(2) and 35 U.S.C. § 299[3], courts have applied this "transaction or occurrence" requirement using a "case-by-case approach" based on a "flexib[le] . . . standard [that] enables the federal courts to promote judicial economy by permitting all reasonably related claims for relief by or against different parties to be tried in a single proceeding under the provisions of Rule 20." *In re EMC Corp.*, 677 F.3d at 1358. The Seventh Circuit has not fashioned a definitive standard for determining what constitutes a single transaction or occurrence. *See Bailey v. N. Trust Co.*, 196 F.R.D. 513, 515 (N.D. Ill. 2000) (explaining that "no hard and fast rules have been established" in this context). Similarly, the phrase "transaction or occurrence" is not defined in Rule 20(a); however, courts have looked to the similar "transaction or occurrence" test for compulsory counterclaims in Rule 13(a). *Mosley*, 497 F.2d at 1333; *PTG Nev., LLC v. Doe*, 2016 U.S. Dist. LEXIS 83546, at *7 (N.D. Ill. June 28, 2016).

For the purposes of Rule 13(a), the Supreme Court has stated that "[t]ransaction is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Moore v. N.Y. Exch.*, 270 U.S. 593, 610 (1926); *see also Burlington N.R. Co. v. Strong*, 907 F.2d 707, 711 (7th Cir. 1990) (applying "logical relationship" test to determine whether the "transaction or occurrence" is the same for purposes of Rule 13(a)). Factors considered by Courts in this District

---

[3] The first prong of 35 U.S.C. § 299 is identical to the first prong of Fed. R. Civ. P. 20, except 35 U.S.C. § 299(a) "adds a requirement that the transaction or occurrence must relate to making, using, or selling of the same accused product or process." *In re Nintendo Co., Ltd.*, 544 Fed. App'x 934, 939 (Fed. Cir. 2013); *see also Smartflash LLC v. Apple, Inc.*, 2014 U.S. Dist. LEXIS 185268, at *9 (E.D. Tex. Apr. 4, 2014) ("While the AIA added a 'same product or process' requirement for joinder, the 'same transaction or occurrence' requirement was always part of the Rule 20 analysis.").

include whether the alleged conduct occurred during the same general time period, involved the same people and similar conduct. *Lozada v. City of Chicago*, 2010 U.S. Dist. LEXIS 89231, at *7 (N.D. Ill. Aug. 30, 2010). The Court has "considerable discretion" and "flexibility" in determining whether Plaintiff has plausibly alleged such a relationship. *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018). Other Circuits have applied the "logical relationship" test to interpret "same transaction or occurrence" as it appears in Rule 20(a) and found that "all reasonably related claims for relief by or against different parties" can be tried in a single proceeding. *Mosley*, 497 F.2d at 1333. Absolute identity of all events is unnecessary. *Id.*; see also *Alexander v. Fulton County,* 207 F.3d 1303, 1323 (11th Cir. 2000)).

Fed. R. Civ. P. 20 and 35 U.S.C. § 299 do not define "occurrence" and courts have not considered the meaning of "occurrence" apart from the meaning of "transaction." *Bose Corp.*, 334 F.R.D. at 516. However, "canons of construction ordinarily suggest that terms connected by a disjunctive . . . be given separate meanings," and the dictionary definitions suggest that "occurrence" is much broader than "transaction." *Id*. An "occurrence" is defined as something that simply happens or appears, and is not necessarily the product of joint or coordinated action. *Id*.

## II.   WELL-PLEADED ALLEGATIONS ESTABLISH JOINDER

### A. Plaintiff's Well-pleaded Allegations Establish that the Seller Aliases Are all Operating in the "Same Transaction, Occurrence, or Series of Transactions or Occurrences."

"In assessing whether the requirements of Rule 20(a)(2) are met, courts must accept the factual allegations in a plaintiff's complaint as true." *Desai v. ADT Sec. Services, Inc.*, 2011 U.S. Dist. LEXIS 77457, at *8 (N.D. Ill. July 18, 2011). A court must construe the complaint "in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences" in favor of the plaintiff. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th

7

Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plaintiff must only put forth enough "facts to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's allegations. *Brooks v. Ross*, 578 F.3d 574, 581 (7th. Cir. 2009).

Plaintiff's well-pleaded allegations[4] establish that the Seller Aliases are all operating in the same transaction, occurrence, or series of transactions or occurrences. Each of the Seller Aliases fit into the following profile: (1) Defendants use nondescript Seller Aliases ([1] at ¶ 11, 12, 19), (2) no credible information regarding Defendants' identity and physical addresses provided ([1] at ¶ 12, 14, 19), and (3) Defendants show evidence of market coordination, i.e., using the same advertising and marketing strategies to target consumers while attempting to evade enforcement ([1] at ¶ 16). In this case, for example, a well-pleaded fact is that the Seller Aliases lack contact information in the storefronts or product listings and that Defendants engaged in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms. [1] at ¶ 17. Additional well-pleaded facts include that "Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies" ([1] at ¶ 16) and that the e-commerce stores at the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. [1] at ¶ 16.

Plaintiff's specific factual allegations that Defendants are working in a similar manner and during the same time period to sell Infringing Products, collectively in the same "occurrence of

---

[4] Plaintiff's allegations are referring to unique identifiers, not just general common elements found on e-commerce stores. The Court should avoid speculating that the unique identifiers are a coincidence and that Defendants are merely acting similarly, but independently of each other. The Court must construe the complaint "in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences" in favor of the plaintiff. *Tamayo*, 526 F.3d at 1081.

mass harm," show a logical relationship supporting joinder. *Bose Corp.*, 334 F.R.D. at 516; *see also Oakley, Inc.*, No. 1:21-cv-00536 (Docket No. 14). Even if Defendants are not directly coordinating, Plaintiff's alleges that Defendants "take advantage of a set of circumstances – the anonymity and mass reach afforded by the internet and the cover afforded by international borders – to violate [Plaintiff's design patent rights] with impunity." *Id*. "[I]t is plausible that Defendants understand that their ability to profit through anonymous internet stores is enhanced as their numbers increase, even though they do not engage in direct communication or coordination." *Id*. Defendants are alleged to be infringers, and "want to blend in to cause consumer confusion." *Id*. at. 514. As a result, it is not possible to link all or clusters of seller aliases together using arbitrary commonalities. Likewise, Plaintiff's is not required to show and provide evidence that each of the Seller Aliases is commonly owned at the pleading stage. Such linking efforts are extremely cumbersome and time consuming and not required by Fed. R. Civ. P. 20 or 35 U.S.C. § 299 to join multiple Seller Aliases at the pleading stage, especially without adversarial presentation and the opportunity to conduct discovery.

### B. Plaintiff's Well-pleaded Allegations Establish that the Seller Aliases Are all Selling the "Same Accused Product."

Plaintiff also alleges that each of the Seller Aliases sells the same accused product. Specifically, Plaintiff's Complaint [1] alleges that Defendants are "making, using, offering for sale, selling and/or importing into the United States for subsequent sale or use unauthorized and unlicensed products, namely the hairbrushes shown in **Exhibit 1**, that infringes Plaintiff's Bounce Curl Design.[5] [1] at ¶ 3. 35 U.S.C. § 299(a)(1) requires, in part, that the Defendants are offering

---

[5] Plaintiff also alleges in its Complaint that "Infringing Products for sale by the Seller Aliases bear similar irregularities and indicia of being unauthorized to one another, suggesting that the Infringing Products were manufactured by and come from a common source and that Defendants are interrelated." [1] at ¶ 19; *see also* ¶¶ 22-27.

9

for sale or selling "the same accused product." Plaintiff's well-pleaded allegations establish that the Defendants are offering for sale and selling the same accused product, namely, the hairbrushes shown in **Exhibit 1** to the Complaint [1]. A comparison of the Bounce Curl Hairbrush, the design of which is covered by the Bounce Curl Design, and a representative sample of the hairbrushes offered for sale by Defendants is shown below. Gaudio Dec. at ¶ 3.



| **Bounce Curl Hairbrush**[6] | **Defendants' Infringing Products**[7] |

While hairbrushes sold by Defendants may vary in color and contain trivial differences in design elements, the products are inherently the same when viewed in the context of the plain language of 35 U.S.C. § 299(a)(1) and "in the eye of an ordinary observer." *See Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008); *see also Oakley, Inc.*, No. 21-cv-00818 (Docket No. 25); *Oakley, Inc.*, No. 1:21-cv-00536 (Docket No. 14) (finding evidence submitted suffices "to satisfy section 299(a)(1)'s requirement that multiple named defendants are selling 'the same accused product or process'"). The "ordinary observer" test is the sole test for determining

---

[6] https://www.bouncecurl.com/products/define-styling-brush
[7] Exhibit 1 to Complaint [3] at pp. 40-41.

whether a design patent has been infringed. *Id.* at 678. Under this test, "an accused product infringes a design patent if 'in the eye of an ordinary observer . . . two designs are substantially the same,' such that 'the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other. . .'" *Curver Luxembourg, SARL v. Home Expressions Inc*., 938 F.3d 1334, 1338 (Fed. Cir. 2019) (quoting *Gorham Mfg. Co. v. White*, 81 U.S. 511, 528 (1871)). The fact-finder must "compare similarities in overall designs, not similarities of ornamental features in isolation." *Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1343 (Fed. Cir. 2020) (citation omitted). Therefore, each of the Seller Aliases is selling the same accused product.

### C. Plaintiff's Well-pleaded Allegations Establish "A Question of Law or Fact Common to All Defendants."

Plaintiff's well-pleaded allegations also satisfy Fed. R. Civ. P. 20(a)(2)(B) and 35 U.S.C. § 299(a)(2), which provides that joinder is proper if "any question of law or fact common to all defendants will arise in the action." In this case, Plaintiff has alleged that Defendants, without any authorization or license from Plaintiff, have knowingly and willfully offered for sale, sold, and/or imported into the United States for subsequent resale or use products that infringe directly the Bounce Curl Design. [13] at ¶ 22. In addition, the methods Plaintiff will use to investigate, uncover, and collect evidence about any infringing activity will be the same or similar for each Defendant. While each Defendant may later present different factual evidence to support individual legal defenses, prospective factual distinctions do not defeat the commonality in facts and legal claims that support joinder under Fed. R. Civ. P. 20(a)(2)(B) and the 35 U.S.C. § 299(a)(2) at this stage in the litigation. *See First Time Videos, LLC v. Does 1–500*, 276 F.R.D. 241, 251–52 (N.D. Ill. 2011) (Castillo, J.).

### III. THE MINORITY APPROACH IN THIS DISTRICT DOES NOT PERMIT JOINDER OF ANY DEFENDANTS

As explained above, there is no controlling Seventh Circuit authority defining a single transaction or occurrence for purposes of joinder. Courts in this District have taken a narrower position than *Bose Corp.* and define "transaction, occurrence or series of transactions and occurrences" to require linking unique information between Seller Aliases (e.g., e-mail addresses, phone numbers, etc.). *See Estée Lauder Cosmetics Ltd. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, 334 F.R.D. 182, 184 (N.D. Ill. 2020) (Chang, J.) ("*Estée Lauder I*"); *Estée Lauder Cosmetics Ltd., et al. v. The Partnerships, et al.,* No. 20-cv-00845 (N.D. Ill. Jun. 22, 2020) (Lee, J.)[8] (Docket Entry No. 40) ("*Estée Lauder II*") (together, the "Minority Approach Decisions"); *compare Oakley, Inc. v. The P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 1:20-cv-05972 (N.D. Ill. Nov. 9, 2020) (Valderrama, J.) (unpublished) (Docket No. 27) (acknowledging and declining to follow the Minority Approach Decisions). This narrow approach does not permit joinder of *any defendants*. Rather, it requires that a plaintiff show that multiple e-commerce store seller aliases are operated by the *same* individual or entity, i.e., a single defendant. Moreover, the information required to meet such a stringent requirement is typically not available prior to court ordered discovery, and even if it was, could easily be circumvented by defendants using false or different information.

The Minority Approach Decisions rely on distinguishable cases, construe allegations in the light most favorable to defendants,[9] and undervalue certain considerations of judicial economy.

---

[8] Judge Lee is now serving as a United States circuit judge of the United States Court of Appeals for the Seventh Circuit.

[9] A court must construe the complaint "in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences" in favor of the plaintiff. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

12

For example, both cite the non-binding *Slep-Tone Entm't Corp. v. Roberto* case for the proposition that multiple defendants alleged to have infringed the same patent or trademark in a similar manner is not sufficient to establish joinder. 2013 U.S. Dist. LEXIS 151923, at *2 (N.D. Ill. Oct. 22, 2013). However, in *Slep-Tone Entm't Corp.*, the defendants were identifiable, distinct individuals and restaurants providing karaoke entertainment. *Id*. There were no allegations in *Slep-Tone Entm't Corp.* that the defendants were unknown and working in a similar manner and during the same time period as part of the same "occurrence" of mass harm, i.e., selling Infringing Products attacking Plaintiff's design patent rights at once. *See Bose Corp.*, 334 F.R.D. at 516. The Minority Approach Decisions also construed facts in the light most favorable to the defendants by downplaying other commonalties between seller aliases as merely coincidental. *See, e.g. Estée Lauder I*, 334 F.R.D. 188-89 ("[i]t is just as likely that each online retailer decided to avoid being shut down yet again by removing the trademarks"); *Estée Lauder II* at p. 9 ("defendants with nearly identical product descriptions may in fact share no ties, with each simply copying the same description from elsewhere").

Finally, the Minority Approach Decisions reason that "this Court must evaluate the evidence submitted in support of liability and, eventually, damages" which the Court reasoned undermines judicial economy. *Estée Lauder I*, 334 F.R.D. at 189. However, allegations in the complaint are accepted as true if a defendant defaults, so there would not be any evidence beyond plaintiff's allegations to evaluate with respect to liability. *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989). Regarding a damages award, such a concern is not applicable in this case because Plaintiff will likely be seeking a profits award of the greater of $250 or the amount restrained in a linked financial account for each Seller Alias, pursuant to 35 U.S.C. § 289.

13

IV.  **JOINDER IS CONSISTENT WITH FAIRNESS, CONVENIENCE AND JUDICIAL ECONOMY**

Joinder at this stage also serves the important interests of convenience and judicial economy, leading to a just, speedy, and inexpensive resolution for Plaintiff, Defendants, and this Court. Joinder does not create any unnecessary delay, nor does it prejudice any party. On the other hand, severance is likely to cause delays and prejudice Plaintiff and Defendants alike. Defendants may be required to defend identical, concurrent lawsuits if severed prematurely into separate cases. Additionally, the Federal Rules of Civil Procedure only apply to the extent that they "affect any party's substantial rights." Fed. R. Civ. P. 61; *see also Coach, Inc. v. 1941 Coachoutletstore.com*, 2012 U.S. Dist. LEXIS 1311, at \*12 (E.D. Va. Jan. 5, 2012). Plaintiff anticipates that Defendants will be individually subject to default, and "there is no prejudice to any defaulting defendant, whose liability may be established upon default irrespective of the presence of any other defendant." *Id.*

The resources of the Court, other judges in this District, and other Districts will be substantially taxed if Plaintiff's claims against Defendants are severed into multiple separate lawsuits. "Requiring the filing of separate complaints could flood the courts with thousands of additional single defendant [Patent] Act cases, with no difference in resolution of nearly every case in a practical sense. The only thing that will inevitably occur is the slowdown of adjudications of other lawsuits, or the decrease of filings of cases which on their face have alleged plausible violations of the [Patent] Act." *Bose Corp.*, 334 F.R.D. at 517, n.6. Importantly, such impediments would also reduce the ability of Plaintiff and other brand owners to effectively protect their intellectual property rights and consumers in a cost-effective manner. This is especially true in the context of online counterfeiting. Online counterfeiting is a rampant and widespread issue for brand owners because, in recent years, marketplace platforms have emphasized opening and marketing

14

their services to sellers located in China[10] seeking to sell directly to U.S. consumers. Gaudio Dec. at ¶ 4. According to a Customs and Border Protection ("CBP") report, in 2021, CBP made over 27,000 seizures of goods with intellectual property rights ("IPR") violations totaling over $3.3 billion, an increase of $2.0 billion from 2020. *Id*. at ¶ 6. Cases like the present case are one of the few effective mechanisms for stopping and deterring online counterfeiting.

In sum, Plaintiff's well-pleaded allegations establish that the named Seller Aliases are participating in the same unlawful occurrence or series of occurrences and that joinder is proper. Plaintiff (as well as other brand owners) would be severely prejudiced if they were required to file separate lawsuits simply because Defendants registered a particular e-commerce store using a different Seller Alias. *Shambour v. Carver County*, 2014 U.S. Dist. LEXIS 110267, at *17 (D. Minn. Aug. 11, 2014) ("In the matter at hand, joinder is proper because the alleged acts similarly support a larger allegation of a systemic problem and the Court is persuaded that keeping Shambour's claims together is not only permissible but preferable.").

## CONCLUSION

For the reasons set forth above, joinder of Defendants is proper. This approach is also consistent with other courts and comports with the strongly encouraged policy of entertaining the broadest possible scope of action consistent with fairness to the parties.

---

[10] The leader of Alibaba's Anti-Counterfeiting Special Task Force noted that "[a]fter we clean up online shops selling counterfeits, the counterfeiters usually change their identities and places of dispatch, using more covert means to continue selling online … Most counterfeiting dens are hidden and well-organized. For example, we encountered a village producing counterfeits. The villagers installed cameras everywhere and when they saw outsiders entering, they became vigilant and even threatened us." Gaudio Dec. at ¶ 5.

Dated this 8th day of November 2024.　　Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Justin T. Joseph
Jennifer V. Nacht
Greer, Burns & Crain, Ltd.
200 West Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
jjoseph@gbc.law
jnacht@gbc.law

*Counsel for Plaintiff Bounce Curl, LLC*